IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.

ZHANE TAVERN ELAMIN,

Defendant.

Criminal No. 2:24-cr-33

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS

The United States of America, represented by Jessica D. Aber, United States Attorney, and Jeremy W. Mckinnon, Special Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. §3553(a). The government has reviewed the presentence investigation report (PSR) prepared by the United States Probation Office and has no objections to the PSR. Based on the nature of the offense, and the defendant's characteristics, the United States requests the court impose a sentence of one-hundred and twenty (120) months imprisonment. This is sufficient, but not greater than necessary, to comply with the goals set forth in 18 U.S.C. §3553(a).

### I.    ACCEPTANCE OF RESPONSIBILITY

Because of Zhane Tavern Elamin's (the defendant) timely plea, a motion to reduce the offense level an additional one point under U.S.S.G. §3E1.1 is appropriate and has been applied here in accordance with the plea agreement. ECF 25.

### II.    PROCEDURAL BACKGROUND

On April 1, 2024, a three (3) count criminal complaint was sworn out and filed against the defendant in the Eastern District of Virginia. ECF 3. The defendant was arrested by order of the

1

court on April 2, 2024. ECF 11. On April 18, 2024, a Grand Jury seated in the Eastern District of Virginia returned a three (3) count indictment against the defendant. ECF 16. On April 8, 2024, the defendant waived his right to a detention and preliminary hearing and has been in custody since ordered by Magistrate Judge Robert J. Krask. ECF 14. On June 12, 2024, pursuant to a plea agreement, the defendant pled guilty to count one (1) of the indictment in violation of 18 U.S.C. §2422(b) attempted coercion and enticement of a minor. ECF 25.

### III.   FACTUAL BACKGROUND

In December 2022, Virginia Beach Police Department (VBPD) received two cybertips from the National Center for Missing and exploited Children (NCMEC) of suspected CSAM uploaded to Discord[1] in October 2022 from an internet protocol (IP) address resolving to Naval Station Norfolk, Virginia. PSR ¶2,1. Upon search of the Discord account that uploaded the files, 121 files of child sexual abuse material (CSAM)[2] with 61 files belonging to known child victims were identified. PSR ¶7. Also found in the return was a selfie-style photograph of a Navy sailor, identified as the defendant by Naval Criminal Investigative Service (NCIS). PSR ¶6.

The defendant stated on his Discord account, "Cassidy Harding 5154", that he "[t]hinks pedophilia is good as long as the kids enjoys it and isn't hurt." PSR ¶69. On December 1, 2022, the defendant identified his predilection for children of a certain age by stating "Looking for cp. Just kids tho no teenagers or babies"; later requesting videos of fellatio with toddlers. PSR ¶69.

Using the screenname "Confident_Light" on the application Whisper[3], the defendant communicated with an undercover agent (UC1) in March of 2024. PSR ¶13. The defendant sent the UC1 two (2) CSAM images, thereafter, asking the UC1 to switch to an encrypted messenger.

---

[1] Discord is a social media platform used for communicating and transferring media through chat rooms and instant messaging.
[2] Child Sexual Abuse Material (CSAM) is used here synonymously with the term "child pornography".
[3] Whisper is an anonymous social media messaging application, available by mobile application and online.

PSR ¶13. Using the username "Loving Pedo"[4], via the encrypted messenger, the defendant stated that he's a "real pedo" that "[watches] cp and talk[s] to minors online." PSR ¶13. After claiming to possess over 100 videos of CSAM with an age range of four (4) to twelve (12) Years old, the defendant sent the UC1 a total of thirty-three (33) CSAM videos which included videos containing the sexual abuse of toddlers and infants. PSR ¶15.

On March 19, 2024, the defendant, using the screenname "Confident_light", engaged in communication with another undercover agent (UC2). PSR ¶8. The defendant began the conversation by stating that he "[wanted] to be caught having sex by a little girl and have her watch." PSR ¶8. The UC2 identified herself as a thirteen (13) year old female located in Virginia. PSR ¶8. The defendant told the UC2 that "he's not a boy, he's a man", and that he had just broken up with a fourteen (14) years old girl that he dated for a year. PSR ¶10.

The defendant then asked the UCA2 if she "would actually meet" and told her that she wouldn't get in trouble. PSR ¶11.  The defendant explained to the UC2 that if they met for sex he could teach her what she needed to know, but that if anyone found out then he would "go to jail" and "it's risky but worth it." PSR ¶11.

The Defendant instructed the UC2 how to download an encrypted chat app where he could safely send a pic of himself. PSR ¶12. After downloading the chat app, the defendant contacted the UC2 using the screenname "Lumerian". PSR ¶13. The defendant confirmed with the UC2 that he was the same person, "Confident_light", and sent the UC2 a selfie-style photograph of himself, the same photo that VBPD uncovered in the investigation of the NCMEC cybertips reported December 2022. PSR ¶13.

After the defendant confirmed that it was the UC2, who he believed to be a thirteen (13) year old female, he proceeded to ask where she lived, if she was home alone a lot, and what stores

---

[4] "Pedo" is commonly used as shorthand for pedophile.

are near UC2's home. PSR ¶13. The defendant suggested that they meet in the Target store and go into the bathroom, stating that they'll need a place "easy to get to but where we won't be seen." PSR ¶13. After the UC2 rejected the bathroom suggestion, the defendant suggested he can sneak into her house if she's left alone, with follow-up inquiry if the home had surveillance cameras because "if I'm seen on camera I'm fucked." PSR ¶13.

The defendant suggested that the bathroom at Target would be the best option for a quick meet and "kissing touching if you want", further explaining that he meant "touching" so the UC2 could "feel what it's like to touch your pussy." PSR ¶13. The defendant told the UC2 that "thinking about it [had him] horny" and then sent the UC2 a picture of an unclothed erect penis. PSR ¶14. The defendant then asked the UC2 "Could I see you naked?". PSR ¶14. After the UC2 stated she was scared to send a picture of herself naked the defendant ceased communication on March 20, 2024. PSR ¶14.

Further, investigation of the defendant's Discord account(s) revealed two other Discord accounts containing CSAM and messages related to the exploitation of children, including the account "Vanhorn#1518". PSR ¶68. In this account, the defendant boasted to another user how he "trained" a five (5) year old to perform sexual acts on him, and engaged sexually with another child who was three (3) to (4) years old. PSR ¶68. The defendant also provided seven (7) files of CSAM to a user who asked if he (the defendant) had more "toddler stuff". PSR ¶68. In the third, now deleted account, six-hundred ninety-seven (697) files were found that included anime CSAM, anime child erotica, and artificial intelligence (AI) generated CSAM. PSR ¶70.

On April 2, 2024, the defendant was interviewed regarding Discord and CSAM. PSR ¶16. The defendant stated that he was attracted to role play involving sexual acts with "slave pairing", "younger 7 to 8", and "father daughter" scenarios because of the "grooming" and "mind control" involved. PSR ¶17. The defendant admitted to receiving and sending CSAM, stating his interest

4

was in the age ranges of twelve (12) to thirteen (13) and sixteen (16) to seventeen (17). PSR ¶18. The defendant admitted to having conversations with twenty (20) to thirty (30) minors, advising that he had requested nude images and videos. PSR ¶19.

### IV.    FACTORS UNDER 18 U.S.C. §3553(a)

Under 18 U.S.C. §3553(a), when imposing a sentence, the Court must consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, including:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2). To the extent a District Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 128 S. Ct. at 596).

### A.    Nature and Circumstances of the Offense

The nature and circumstances of the defendant's crime(s) are serious and pervasive. The defendant's affinity for the sexual exploitation of children is exemplified in his digital footprint

5

across multiple platforms and mediums, ranging from his private messaging chats with minors to his media collection of CSAM.

The defendant quickly escalated his communications with UCA2, who he believed to be thirteen (13) years old, from an initial conversation of sexual history into logistical planning of a tangible meeting. Establishing the logistics of the rendezvous, the defendant made cursory plans for avoiding surveillance (Residential security cameras) to planning a location that was accessible to both parties (Target, near UC2 residence.) The defendant's numerous comments, including references to "jail" and "trouble", showed his cognizance of the conduct being criminal and disregard for the repercussions. However, the defendant pursued the course of action, only ceasing communication once the UC2 did not reciprocate a photograph of herself after the defendant sent a picture of his erect penis.

Within the same timeframe of the defendant's communication with UC2, March 2024, the defendant chatted with another undercover agent, UC1. However, in this conversation, the defendant shared some of his CSAM collection, even bragging as to the variety and amount, having one hundred videos of prepubescent CSAM. The defendant's pride in his criminality is heightened by his publication of his affliction, using the screenname "Loving Pedo".

He further expresses his pedophilic tendencies, by telling agents during his interview on April 2, 2024, that he enjoys role play involving sexual dominance with age gaps (Father-Daughter, Slave pairings . . .) because of the involvement of "grooming" and "mind control". The age-gap fetish can be seen in his communication with UC2, where he inquires into her sexual experience, and states that he can "teach her." As well, he portrays himself in a position of dominance and authority, stating that "he is a man", and using his military dress uniform picture in his messaging via Discord.

However, he diminished his responses during the interview with agents, stating that his

6

preferred CSAM age range is twelve (12) years old at the youngest. This is directly in conflict with the CSAM videos that he sent to UC1, which included the sexual abuse of toddlers and infants. As well, his use of the application Discord, dating back to December 1, 2022, where the defendant requested videos of fellatio involving toddlers.

While the defendant is a younger man, being twenty-one (21) years of age, his youthfulness cannot dismiss accountability. An active-duty military member since 2021, as an operations specialist he was responsible for communicating strategic and tactical information within his Command. The surrounding facts and circumstances show a continual course of conduct, and an awareness of the criminality of his actions.

### B.    Defendant's History and Characteristics

The defendant has no self-reported, or documented, substance abuse issues. PSR ¶59. Prior to the charged violations, the defendant has no record of receiving mental health treatment, however, the defendant does claim a diagnosis of post-traumatic stress disorder from approximate ages of fourteen (14) to fifteen (15). PSR ¶54. Defendant was gainfully employed in the U.S. Navy since November 3, 2021, working as an operational specialist. PSR ¶58.

### C.    Deter Future Criminal Conduct

The defendant has shown a history of engaging in child exploitation and further promulgating the online environment supporting others to engage in the distribution of CSAM. Specific deterrence is required for the defendant to not re-engage in his tendencies.

### D.    Treatment for the Defendant

Based on information available to the government, it appears the defendant needs mental health and sex offender treatment while serving his sentence in the Bureau of Prisons (BOP). As well, being of a young age, the defendant would benefit from a long-term plan for vocational

training, so that he may land in a stable environment upon his eventual release from incarceration.

## V.    CONCLUSION

Based on the above factors, such as the nature and seriousness of the defendant's conduct, and the need for adequate deterrence – both specific and general – the Government respectfully requests that the Court sentence the defendant to a term of incarceration of one-hundred and twenty (120) months.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Jeremy W. Mckinnon
California Bar No. 336424
Special Assistant United States Attorney
United States Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Office: 757.441.3040
Fax: 757.441.6689
E-mail: jeremy.mckinnon@usdoj.gov